FILED

2022 Mar-22  AM 10:05
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| EMILY GENTEEL SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:20-cv-01604-NAD |
| | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| COMMISSIONER, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER
## <u>AFFIRMING THE DECISION OF THE COMMISSIONER</u>

Pursuant to 42 U.S.C. § 405(g), Plaintiff Emily Genteel Smith filed for review of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner") on her claim for disability benefits based on fibromyalgia, bipolar disorder, anxiety, attention deficit hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). Doc. 1. Plaintiff Smith applied for disability benefits for the period from August 14, 2014, to December 31, 2018. Doc. 12-4 at 28. But, because of a prior denial of benefits, Smith's effective onset date is September 15, 2017.[1] Doc. 14 at 2; Doc. 12-4 at 2–16. The Commissioner

---

[1] *See* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing.").

denied Smith's claim for benefits.  Doc. 12-3 at 25–37.

Pursuant to 28 U.S.C. § 636(c)(1) and Federal Rule of Civil Procedure 73, the parties have consented to magistrate judge jurisdiction.  Doc. 16.  After careful consideration of the parties' submissions, the relevant law, and the record as a whole, the court **AFFIRMS** the Commissioner's decision.

## ISSUES FOR REVIEW

In this appeal, Plaintiff Smith argues that the court should reverse the Commissioner's decision for two reasons:  (1) the administrative law judge (ALJ) failed to give proper weight to the opinion of Smith's treating physician—Dr. Vishala Chindalore—and failed to show good cause for finding that opinion unpersuasive; and (2) the ALJ failed to conduct a proper analysis of Smith's fibromyalgia under "SSR 12-2p."[2]  Doc. 14.

## STATUTORY AND REGULATORY FRAMEWORK

A claimant applying for Social Security benefits bears the burden of proving

---

[2] Smith's initial brief also lists a third issue—i.e., that the "ALJ failed to state with at least 'some measure of clarity' the grounds for decision in repudiating the opinion of an examining psychologist."  Doc. 14 at 2.  But, in this regard, Smith has not raised any additional issue for review.  Smith's initial brief does not otherwise mention, discuss, or argue that issue (*see generally* Doc. 14), and Smith's reply brief includes only the two issues discussed above in text (*see generally* Doc. 21).  *See, e.g.*, *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) ("[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this court from] considering the issue on appeal."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (similar).

disability. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

The Social Security Administration (SSA) reviews an application for disability benefits in three stages: (1) initial determination, including reconsideration; (2) review by an ALJ; and (3) review by the SSA Appeals Council. *See* 20 C.F.R. § 404.900(a)(1)–(4).

When a claim for disability benefits reaches an ALJ as part of the administrative process, the ALJ follows a five-step sequential analysis to determine whether the claimant is disabled. The ALJ must determine the following:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   if not, whether the claimant has a severe impairment or combination of impairments;

(3)   if so, whether that impairment, or combination of impairments,

meets or equals any "Listing of Impairments" in the Social
Security regulations;

(4)     if not, whether the claimant can perform his past relevant work
        in light of his "residual functional capacity" or "RFC"; and

(5)     if not, whether, based on the claimant's age, education, and work
        experience, he can perform other work found in the national
        economy.

20 C.F.R. § 404.1520(a)(4); *see Winschel v. Commissioner of Soc. Sec. Admin.*, 631

F.3d 1176, 1178 (11th Cir. 2011).

The Social Security regulations "place a very heavy burden on the claimant to

demonstrate both a qualifying disability and an inability to perform past relevant

work." *Moore*, 405 F.3d at 1211.  At step five of the inquiry, the burden temporarily

shifts to the Commissioner "to show the existence of other jobs in the national

economy which, given the claimant's impairments, the claimant can perform."

*Washington v. Commissioner of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018)

(quoting *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).   If the

Commissioner makes that showing, the burden then shifts back to the claimant to

show that he cannot perform those jobs.  *Id.*  So, while the burden temporarily shifts

to the Commissioner at step five, the overall burden of proving disability always

remains on the claimant.  *Id.*

## STANDARD OF REVIEW

The federal courts have only a limited role in reviewing a plaintiff's claim

under the Social Security Act.  The court reviews the Commissioner's decision to

4

determine whether "it is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).

**A.**   With respect to fact issues, pursuant to 42 U.S.C. § 405(g), the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).

In evaluating whether substantial evidence supports the Commissioner's decision, a district court may not "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks and citation omitted); *see Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (similar).   If the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford*, 363 F.3d at 1158 (quoting *Martin*, 894 F.2d at 1529).

But "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden*, 672 F.2d at 838 (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)); *see Walker v. Bowen*, 826 F.2d 996,

999 (11th Cir. 1987).

**B.**  With respect to legal issues, "[n]o . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims." *Walker*, 826 F.2d at 999.

## BACKGROUND

### A.    Plaintiff Smith's personal and medical history

Plaintiff Smith was born on November 6, 1975, and was 43 years old when her initial application for social security benefits was denied.  Doc. 12-4 at 28–29.  Smith had worked as a nurse but stopped working on August 14, 2014, because of her health conditions.  Doc. 12-7 at 4–5.

Smith previously had filed an application for Social Security benefits that an ALJ denied on September 15, 2017.  Doc. 12-4 at 2–16.  In that case, the Appeals Council affirmed the ALJ's denial of benefits (Doc. 12-4 at 21–23), and the district court then affirmed (*Smith v. Berryhill*, No. 4:18-CV-00914-AKK, 2019 WL 3305184 (N.D. Ala. July 23, 2019)).

In November 2013, Smith had lap band gastric surgery for obesity.  Doc. 12-8 at 35, 128–51; Doc. 12-9 at 26, 28–29.  Smith had no initial complications from the surgery.  Doc. 12-9 at 29.

On June 12, 2019, Smith had pelvic surgery, including a bilateral salpingectomy, for endometriosis causing chronic pelvic pain.  Doc. 12-8 at 46–48.

### 1.   Smith's mental health treatment

Beginning in 2013 and continuing through 2019, Smith frequently went to therapy and psychiatric appointments with a Certified Registered Nurse Practitioner (CRNP), Dan Harris, at Grayson and Associates P.C. for bipolar disorder, depression, anxiety, sleep issues, paranoia, memory problems, and occasional hallucinations.  Doc. 12-3 at 43–46; Doc. 12-8 at 3–76, 92–131: Doc. 12-9 at 89–91. Throughout that time period, Smith took various psychiatric medications.  Doc. 12-8 at 3–76.  While treating Smith, Harris provided multiple statements about her functional limitations due to her mental health symptoms.  Doc. 12-8 at 80; Doc. 12-9 at 72–75.  In one assessment, Harris opined that Smith would miss 20 or more days of work per 30-day period because of her psychological symptoms.  Doc. 12-8 at 80.

On October 26, 2018, Jack Bentley, Jr., Ph.D. performed a mental status examination on Smith.  Doc. 12-8 at 77.  Dr. Bentley recounted Smith's history, stating that Smith had experienced psychiatric problems beginning in childhood. Doc. 12-8 at 77.  He noted that Smith never had been hospitalized for psychiatric reasons.  Doc. 12-8 at 77.  After performing the mental status examination, Dr. Bentley diagnosed Smith with PTSD, Benzodiazepine addiction, hypertension, fibromyalgia, and lap band surgery.  Doc. 12-8 at 78. Dr. Bentley opined that Smith was not exaggerating her symptoms, that she would have "severe limitations in her ability to sustain complex or repetitive work related activities," that her impairment

level for simple tasks and communicating would be in the moderate range, and that Smith "would certainly seem capable of performing simple, single and two-step work-related activities if so motivated." Doc. 12-8 at 79.

On September 18, 2019, Dr. June Nichols submitted a psychological evaluation of Smith. Doc. 12-9 at 95–99. Dr. Nichols summarized Smith's medical and personal history (Doc. 12-9 at 95–97), then conducted a mental status examination (Doc. 12-9 at 97). Dr. Nichols opined that Smith had ADHD, bipolar disorder with depression, and panic disorder. Doc. 12-9 at 98.

### 2.      Smith's fibromyalgia treatment

During his mental status evaluation in October 2018, Dr. Bentley noted that Smith had been experiencing symptoms of fibromyalgia for ten years. Doc. 12-8 at 77.

On April 25, 2019, Smith went to the Anniston Medical Clinic, and saw Dr. Vishala Chindalore for fibromyalgia, low back pain, and general osteoarthritis. Doc. 12-8 at 132–33, 139–42. Smith described her pain as aching and constant with daily exacerbations, and said that her symptoms were worsening. Doc. 12-8 at 139. Smith also was experiencing joint pain and stiffness due to osteoarthritis. Doc. 12-8 at 139. Smith was taking Neurontin medication to treat her symptoms but continued to have some pain. Doc. 12-8 at 139. Smith had no swelling of extremities. Doc. 12-8 at 140. She had good range of motion, but all fibromyalgia trigger points were positive,

she had muscle spasm, and she had painful range of motion with no swelling.  Doc.

12-8 at 142.  Dr. Chindalore increased Smith's Neurontin dosage.  Doc. 12-8 at 141.

Smith returned to the Anniston Clinic on July 18, 2019, with the same

complaints.  Doc. 12-8 at 132–37.  Smith again presented with worsening, aching

constant pain, as well as joint pain and stiffness.  Doc. 12-8 at 134.  Smith had good

range of motion, but was positive for all fibromyalgia trigger points, had muscle

spasms, and had painful range of motion of all extremities with no swelling.  Doc.

12-8 at 136.  Dr. Chindalore noted that Smith's "fibromyalgia [was] stable on current

meds," and that increasing her medication had helped.  Doc. 12-8 at 136.

On August 20, 2019, Smith returned to Dr. Chindalore with the same

complaints.  Doc. 12-8 at 143.  Smith reported that she still was suffering from

constant aching pain that had not improved.  Doc. 12-8 at 144.  Smith saw Dr.

Chindalore emergently based on increased pain in her back, neck, and shoulders.

Doc. 12-8 at 144.  Smith still had pain, but had good range of motion and no swelling

of extremities.  Doc. 12-8 at 145–46.

On October 3, 2019, Dr. Chindalore filled out a "Physical Capacities Form"

for Smith.  Doc. 12-9 at 93.  Dr. Chindalore opined that, due to her medical

conditions, Smith would need to spend 2-to-3 hours per day lying down, sleeping,

or with her legs propped up, that she would miss 3-to-4 days of work per 30-day

period, and that she would be off-task 30% of the time.  Doc. 12-9 at 93.  Dr.

Chindalore stated that Smith suffered from fibromyalgia, generalized osteoarthritis, and low back pain.  Doc. 12-9 at 93.  Dr. Chindalore also stated that Smith's medications caused drowsiness, loss of coordination, dizziness, and swelling of extremities.  Doc. 12-9 at 93.

### 3.    Evidence regarding Smith's ability to function

On June 28, 2018, Smith's husband filled out a function report stating that Smith no longer could do household tasks, sometimes struggled with personal hygiene, had trouble with memory and concentration, and was limited in her social activities because of anxiety.  Doc. 12-7 at 18–25.

On July 1, 2018, Smith herself filled out a function report identifying similar issues and focusing on her sleep issues, memory and concentration issues, and mood problems.  Doc. 12-7 at 26–33.

On March 6, 2019, Smith's husband completed an affidavit stating that Smith suffered daily from anxiety, depression, fibromyalgia, short-term memory loss, no energy, attention deficit disorder (ADD), problems completing simple tasks, severe mood swings, problems sleeping, confusion, problems spelling, and problems driving.  Doc. 12-7 at 55.

In September 2019, Smith's husband submitted another affidavit stating that Smith's conditions seemed to be progressively worsening.  Doc. 12-7 at 82.

### B.     Social Security administrative proceedings

#### 1.     Initial application and denial of benefits

On June 8, 2018, Smith filed an application for disability insurance benefits based on depression, bipolar disorder, anxiety, and related disorders with an alleged onset date of August 14, 2014.  Doc 12-6 at 2; Doc. 12-4 at 28.  On November 16, 2018, Smith's application for benefits was initially denied because Smith did not qualify as disabled based on the evidence presented.  Doc. 12-4 at 28–41.

Smith then requested a hearing before an ALJ.  Doc. 12-5 at 91.

#### 2.     ALJ hearing

On October 4, 2019, the ALJ conducted a video hearing on Smith's application for benefits.  Doc. 12-3 at 49.

During the hearing, Smith testified that she lived with her husband and teenaged stepson.  Doc. 12-3 at 51.  Smith testified that her husband was physically disabled, and that she had to remind him to take his medication.  Doc. 12-3 at 51.

Smith testified that the primary reason that she could not work was that she suffered from "mental illness, bipolar disorder, short-term memory loss, confusion, lack of coordination, nausea, [and] vomiting."  Doc. 12-3 at 52.  She stated that the nausea and vomiting were caused by lap band surgery and medication side effects.  Doc. 12-3 at 52.  The ALJ noted that Smith had worked since her lap band surgery and asked if anything had changed, but Smith did not provide an answer indicating

that anything had changed. Doc. 12-3 at 52. The ALJ asked if Smith had seen a gastrointestinal doctor, and Smith said that she had not for several years. Doc. 12-3 at 52. Smith testified that she vomited every day, sometimes multiple times per day, but did not have esophageal damage. Doc. 12-3 at 52. Smith testified that she slept about 4 or 5 hours per night and about 15-to-16 hours total every day. Doc. 12-3 at 53.

Smith also testified that CRNP Dan Harris knew best her mental condition, and that Dr. Chindalore knew best her physical condition because she had been going to Dr. Chindalore for fibromyalgia. Doc. 12-3 at 53. Smith testified that Dr. Chindalore prescribed medication for her fibromyalgia, recommended propping up her feet for swelling, and recommended warm showers and moderate exercise. Doc. 12-3 at 53–54. But Smith then testified that she did not exercise because she was not able to do so. Doc. 12-3 at 54.

Smith further testified that she had no hobbies or interests and generally spent her time on the couch such that she was only "up" for about three hours per day. Doc. 12-3 at 54. She stated that medication helped her, but caused many side effects, such as affecting her short-term memory and coordination, and causing nausea and vomiting. Doc. 12-3 at 54, 56. Smith said that she had trouble with coordination and would "fumble with stuff." Doc. 12-3 at 55. Smith also testified that her husband had to remind her to take her medication. Doc. 12-3 at 56. She testified

12

that she could not pay attention to a two-hour movie.  Doc. 12-3 at 56.

Smith testified that she did not prepare meals or go grocery shopping, and that being around people gave her panic attacks.  Doc. 12-3 at 57.  She testified that she had swelling in the range between mild and extreme that required propping up her lower extremities for 3-to-4 hours during a regular day.  Doc. 12-3 at 58.  Smith testified that her problems became debilitating in 2014.  Doc. 12-3 at 60.

A vocational expert (or "VE"), John Yent, then testified that a hypothetical individual—with Smith's characteristics and the residual functional capacity (RFC) described by the ALJ—could find work existing in significant numbers in the national economy.  Doc. 12-3 at 60–64.

### 3.    ALJ decision

On November 4, 2019, the ALJ entered an unfavorable decision on Smith's application for benefits.  Doc. 12-3 at 25–37.

The ALJ applied the sequential five-step test for disability.  *See* 20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178.  At step one, the ALJ found that Smith's last insured date was December 31, 2018, and that she did not engage in substantial gainful activity from the alleged onset date of August 14, 2014, through her last insured date.  Doc. 12-3 at 30.  At step two, the ALJ found that Smith had the following severe impairments:  fibromyalgia, bipolar disorder, anxiety, ADHD, and PTSD.  Doc. 12-3 at 30–32.

In determining Smith's severe impairments, the ALJ considered the psychological opinion of Dr. Bentley, and found that it was persuasive and consistent with the record.  Doc. 12-3 at 30–31.  The ALJ also considered the opinion of CRNP Dan Harris, and found that his assertion that Smith would miss 20 days of work per month due to her psychological symptoms was unpersuasive because it was inconsistent with and not supported by treatment records.  Doc. 12-3 at 31.  The ALJ considered the opinion of Dr. June Nichols, and found that Dr. Nichols did not opine on Smith's limitations.  Doc. 12-3 at 31.

The ALJ then considered the October 2019 "Physical Capacities Form," in which Dr. Chindalore opined that Smith would spend 3 hours in an 8-hour workday lying down, sleeping, or elevating her legs, would miss 3-to-4 days of work per month due to her conditions, would be off-task a substantial amount of the time, and would suffer side effects from her medications.  Doc. 12-3 at 31–32.  The ALJ found that Dr. Chindalore's opinion was unpersuasive, because it was "inconsistent with the provider's treatment records, and [wa]s not supported by objective evidence." Doc. 12-3 at 32.

The ALJ noted Smith's diagnosis of fibromyalgia, and found that Smith took medication for the condition.  Doc. 12-3 at 32.  The ALJ also noted that in 2019 Smith complained of constant pain—especially in her low back—and had positive trigger points and muscle spasms, but found that she had good range of motion in

14

her joints.  Doc. 12-3 at 32.

The ALJ also noted Smith's diagnoses with bipolar disorder, anxiety, ADHD, and PTSD, and then stated that Smith took medication for the conditions, and that in March 2019 her medication had helped her.  Doc. 12-3 at 32.  The ALJ stated that Smith had lap band surgery in November 2019, and a hysterectomy in June 2019 because of endometriosis.  Doc. 12-3 at 32.  The ALJ then found that in July 2019 Smith had no swelling in her extremities.  Doc. 12-3 at 32.

At step three, the ALJ found that Smith did not have an impairment or combination of impairments that met or medically equaled the severity of any "Listing of Impairments" in the applicable Social Security regulations.  Doc. 12-3 at 32–33.  The ALJ then determined at step four that Smith could not perform any of her past relevant work.  Doc. 12-3 at 36.

In determining whether Smith could perform past relevant work, the ALJ found that Smith had the following residual functional capacity (RFC):  to perform light work in which she could remember, understand, and carry out simple, routine tasks; could have superficial interaction with supervisors and coworkers, but no interaction with the public; could never perform work at a production rate pace; could tolerate occasional changes in routine; and could work with objects instead of people.  Doc. 12-3 at 33.  To determine Smith's RFC, the ALJ followed the applicable two-step process to consider her symptoms, and then assessed whether

the intensity, persistence, and limiting effects of Smith's subjective symptoms were consistent with the evidence.  Doc. 12-3 at 34.

The ALJ summarized Smith's hearing testimony, as well as the evidence from Smith's husband.  Doc. 12-3 at 34–35.  After considering the evidence, the ALJ found that Smith's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that her testimony about the intensity, persistence, and limiting effects of her symptoms was not entirely consistent with the evidence. Doc. 12-3 at 35.  The ALJ noted that Smith said she had to spend three or four hours per day with her legs propped up due to swelling, but found that a recent medical examination showed no swelling.  Doc. 12-3 at 35.

The ALJ also stated that Smith tested positive for fibromyalgia trigger points, but found that she had reported improvement of her fibromyalgia symptoms with medication.  As a result, the ALJ found that Smith's fibromyalgia could be accommodated with a reduced exertional level.  Doc. 12-3 at 35.  The ALJ stated that Smith had not been compliant with the instruction of her treating physician (Dr. Chindalore) to exercise regularly.  Doc. 12-3 at 35.  The ALJ found that some of Smith's testimony about her psychological conditions was internally inconsistent, and found that her psychological symptoms could be accommodated as reflected in the RFC determination.  Doc. 12-3 at 35.

Relying on the testimony of the vocational expert, the ALJ found that,

16

considering Smith's qualifications and RFC, there were jobs in significant numbers in the national economy that Smith could have performed.  Doc. 12-3 at 36–37.  Accordingly, the ALJ found that Smith was not disabled under the Social Security Act from August 14, 2014 (the alleged onset date), to December 31, 2018.  Doc. 12-3 at 37.

### 4.    Appeals Council decision

On October 2, 2020, the Appeals Council denied review of the ALJ's decision, finding no basis for changing the ALJ's decision.  Doc. 12-3 at 2.  The Appeals Council noted that it had reviewed the additional evidence that Smith submitted, but found that the evidence did not relate to the period at issue.  Doc. 12-3 at 3.  Because the Appeals Council found no reason to review the ALJ's opinion, the ALJ's decision became the final decision of the Commissioner.

## DISCUSSION

Having carefully considered the record and briefing, the court concludes that the ALJ's decision was supported by substantial evidence and based on the proper legal standards.

## I.    The ALJ did not err in finding unpersuasive the opinion of Plaintiff Smith's treating physician.

The ALJ did not err in finding unpersuasive the opinion of Plaintiff Smith's treating physician, Dr. Vishala Chindalore.  Smith argues that the ALJ erred in failing to give considerable weight to the opinion in the "Physical Capacities Form"

that Dr. Chindalore filled out in October 2019.  Doc. 14 at 16–20.  Smith argues that Dr. Chindalore's opinion was well supported by the treatment records.  Doc. 14 at 20.

As a legal matter, Smith argues that the ALJ erred under *Simon v. Commissioner* ("*Simon I*") because the Eleventh Circuit's "treating physician rule" still controls—notwithstanding that the SSA has promulgated new regulations regarding the consideration of medical opinions.  *See* 1 F.4th 908, 911 (11th Cir. 2021), *opinion withdrawn and superseded on reh'g*, 7 F.4th 1094 (11th Cir. 2021); Doc. 14 at 17–20.

The SSA has revised its regulations on the evaluation of medical opinions. Under the new regulations, for an application filed on or after March 27, 2017 (like the application in this case), an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," including the opinion of a treating physician.  20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Instead, the ALJ considers the persuasiveness of each medical opinion using the following five factors:  (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing that the medical source has familiarity with other evidence or an understanding of the SSA's policies

18

and evidentiary requirements.  20 C.F.R. §§ 404.1520c(c).

Supportability and consistency are the most important factors, and the ALJ must explain how the ALJ considered those factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ may explain how the ALJ considered the other factors, but the ALJ is not required to do so.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Historically, the Eleventh Circuit's treating physician rule required that an ALJ give the opinion of a treating physician "substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation marks and citation omitted).  Good cause exists under the following circumstances:  "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* at 1240–41.[3]

However, in a recent unpublished opinion, the Eleventh Circuit reasoned that, "[f]or claims filed on or after March 27, 2017, . . . no significant weight is given to

---

[3] "The Eleventh Circuit developed the treating physician rule 'as a means to control disability determinations by administrative law judges under the Social Security Act.'" *Glover v. Kijakazi*, No. 4:20-CV-1622-GMB, 2022 WL 256875, at *3 (N.D. Ala. Jan. 26, 2022) (quoting *Black & Decker Disab. Plan v. Nord*, 538 U.S. 822, 829 (2003)).  "The Social Security Administration then formalized the treating physician rule in 1991, implementing regulations that required ALJs to 'give more weight to medical opinions' from treating sources and to 'give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2)).

statements made by treating physicians as opposed to non-treating medical sources." *Planas ex rel. A.P. v. Commissioner of Soc. Sec.*, 842 F. App'x 495, 497 n.1 (11th Cir. 2021).

In this regard, Smith's reliance on *Simon I* is misplaced. *Simon I* cannot support any argument that the treating physician rule still applies because the Eleventh Circuit subsequently withdrew the *Simon I* opinion. Indeed, the Eleventh Circuit's superseding opinion made clear that the Court was not addressing whether the treating physician rule survived the SSA's promulgation of the new, revised regulations: "[W]e need not and do not consider how the new regulation[s]" for evaluating medical opinions "bear[] upon our precedents requiring an ALJ to give substantial or considerable weight to a treating physician's opinions absent good cause to do otherwise." *Simon v. Commissioner, Soc. Sec. Admin.*, 7 F.4th 1094, 1104 (11th Cir. 2021).

Regardless, as a factual matter, the ALJ here considered Dr. Chindalore's opinion as expressed in the October 2019 "Physical Capacities Form" and provided a detailed summary of that opinion. Doc. 12-3 at 31–32. The ALJ then found that Dr. Chindalore's opinion was "unpersuasive, as it [wa]s internally inconsistent with the provider's treatment records, and [wa]s not supported by objective evidence." Doc. 12-3 at 32. Substantial evidence supported that determination.

The ALJ found that Smith had a diagnosis of fibromyalgia with chronic pain

(especially in her low back), but that she was on medication. Doc. 12-3 at 32. The ALJ found that Dr. Chindalore's treatment records from July 2019 showed that Smith had positive trigger points and muscle spasms, but also had a good range of motion in her lumbar spine, shoulders, hands, wrists, hips, knees, ankles, and feet. Doc. 12-3 at 32 (citing Exhibit B8F).

The ALJ also found that Smith's medical records, including records from Dr. Chindalore's examination in July 2019, showed no swelling in her extremities. Doc. 12-3 at 32 (citing Exhibits B8F, B9F, B11F, and B12F); *see also* Doc. 12-3 at 35 (similar). And the ALJ found that Dr. Chindalore had recommended that Smith exercise regularly, but that Smith had been noncompliant. Doc. 12-3 at 35.

Under the new, revised regulations, the ALJ was not required to give special weight to Dr. Chindalore's opinion. *See* 20 CFR § 404.1520c(a). Rather, the ALJ had to consider and explain the supportability and consistency of that opinion. 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c). The ALJ specifically stated that Dr. Chindalore's opinion was not persuasive because it was inconsistent and unsupported. Doc. 12-4 at 32.

Further, the ALJ acknowledged that Smith had fibromyalgia and pain, but explained that Smith had good range of motion and no swelling, citing to treatment records from Dr. Chindalore. Doc. 12-3 at 52. As part of the assessment of Smith's residual functional capacity (RFC), the ALJ also explained the inconsistency

between Dr. Chindalore's opinion and the record evidence, stating that treatment records showed no swelling that would require Smith to prop up her legs and that medication improved Smith's fibromyalgia. Doc. 12-3 at 35. The ALJ specifically referenced record evidence that was inconsistent with and did not support Dr. Chindalore's opinion—i.e., evidence indicating that Smith was not disabled to the extent that Dr. Chindalore opined. Accordingly, under the new regulations, the ALJ's analysis of Dr. Chindalore's medical opinion was proper, and substantial evidence supported the ALJ's decision to discount that opinion. *See* 20 C.F.R. §§ 404.1520c(b)(2), 404.1520c(c).

Moreover, even under the Eleventh Circuit's treating physician rule (if it still were to apply), the ALJ demonstrated "good cause" to discount Dr. Chindalore's opinion, finding that the opinion was inconsistent with Dr. Chindalore's own treatment records and was not bolstered by other record evidence. *See Winschel*, 631 F.3d at 1179.

As explained above, substantial evidence supported the ALJ's finding that Dr. Chindalore's opinion was unpersuasive. Among other things, treatment records from Dr. Chindalore showed that, while Smith experienced chronic pain, taking the medication Neurontin improved her symptoms, and that she had good range of motion and no swelling in her extremities. Doc. 12-8 at 121–46. Smith also testified that Dr. Chindalore recommended moderate exercise. Doc. 12-3 at 53–54.

Evidence that Smith did not have swelling in her extremities (which would have required her to prop up her feet, *see* Doc. 12-3 at 35) and that Dr. Chindalore recommended exercise suggests that Smith was not as disabled as Dr. Chindalore opined in the "Physical Capacities Form."   Likewise, Dr. Chindalore's treatment notes lack evidence about anything requiring lying down or about staying on-task. *See* Doc. 12-8 at 121–46.

Thus, a reasonable person would accept the ALJ's finding that Dr. Chindalore's opinion was not persuasive, and substantial evidence supported the ALJ's determination.   *See Crawford*, 363 F.3d at 1158.   So long as the ALJ's decision is supported by substantial evidence, the court must affirm, "[e]ven if the evidence preponderates against the Commissioner's findings."   *Id.* (quoting *Martin*, 894 F.2d at 1529).

## II.   Plaintiff Smith has not identified any reversible error regarding the ALJ's analysis of her fibromyalgia under "SSR 12-2p."

Plaintiff Smith argues that the ALJ failed to conduct a proper analysis of her fibromyalgia under "SSR 12-2p," but has not identified any reversible error in this regard.   In SSR 12-2p, the SSA recognized fibromyalgia as a "basis for a finding of disability."   SSR 12-2p, 2012 WL 3017612 (July 25, 2012).   That ruling "provides guidance on the evidentiary showing to establish that a claimant has a medically determinable impairment ('MDI') of fibromyalgia and whether that impairment qualifies as disabling under the Social Security Act."   *Peterson v. Berryhill*, No.

1:15-CV-751-GMB, 2017 WL 1015316, at *3 (M.D. Ala. March 15, 2017).

Under SSR 12-2p, if a claimant has a fibromyalgia impairment, "the normal five-step sequential evaluation process is used to determine whether the claimant is disabled." *Id.* But, "[a]s with any claim for benefits," the ALJ "must ensure there is sufficient objective evidence to support a finding that the person's impairment[] so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." SSR 12-2p, 2012 WL 3017612 (July 25, 2012).

On appeal, Smith appears to argue that the ALJ erred because the decision does not cite SSR 12-2p. Smith argues that her "medical treatment history is consistent with her subjective testimony associated with her fibromyalgia claim." Doc. 14 at 23.

But, consistent with SSR 12-2p (and as explained above), the ALJ here applied the sequential five-step test for disability in light of Smith's fibromyalgia. *See* 20 C.F.R. § 404.1520(a)(4); *Winschel*, 631 F.3d at 1178; Background B.3 *supra*. Among other things, the ALJ found that Smith's fibromyalgia qualified as a severe impairment. Doc. 12-3 at 30. And, in assessing Smith's residual functional capacity (RFC), the ALJ not only accounted for Smith's fibromyalgia symptoms, but also included accommodations for her fibromyalgia. *See* Doc. 12-3 at 35.

While SSR 12-2p recognized fibromyalgia as a "basis" for disability benefits,

that ruling did not impose a new legal standard that is separate or different from the five-step test for disability that the ALJ applied here.  SSR 12-2p, 2012 WL 3017612 (July 25, 2012) (specifically adopting the five-step sequential analysis discussed above).  Because the ALJ properly analyzed Smith's claim for benefits given her fibromyalgia based on that five-step test, Smith has identified no error in the ALJ's lack of a citation to SSR 12-2p.

To the extent that Smith suggests some other error with regard to SSR 12-2p, she has not raised any additional issue for review.  *See, e.g.*, *Singh*, 561 F.3d at 1278–79; *Sapuppo*, 739 F.3d at 681.  Aside from the statement discussed above that Smith's "medical treatment history is consistent with her subjective testimony associated with her fibromyalgia claim" (Doc. 14 at 23), Smith's argument on SSR 12-2p is limited to a block quotation from an Eleventh Circuit case that predates SSR 12-2p, a list of two cases from this district in which the court reversed ALJ decisions relating to fibromyalgia and SSR 12-2p, and block quotations from medical records. Doc. 14 at 21–24; Doc. 21 at 9–12.

As explained above, the ALJ applied the proper five-step legal standard.  And, reviewing for substantial evidence, the court cannot guess as to what finding Smith hypothetically might suggest was in error, because the court cannot "decide the facts anew, reweigh the evidence," or substitute its own judgment for that of the ALJ. *Winschel*, 631 F.3d at 1178 (quotation marks and citation omitted).  Without Smith's

having identified any specific findings that conceivably could form the basis for error, the court can discern no error with regard to the ALJ's analysis of Smith's fibromyalgia under SSR 12-2p. *See, e.g.*, *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

## CONCLUSION

For the reasons stated above (and pursuant to 42 U.S.C. § 405(g)), the court **AFFIRMS** the Commissioner's decision.  The court separately will enter final judgment.

**DONE** and **ORDERED** this March 22, 2022.

_____
**NICHOLAS A. DANELLA**
UNITED STATES MAGISTRATE JUDGE